Filed 10/23/25  Conservatorship of Joshua C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Conservatorship of the Person of JOSHUA C. | |
| | D085990 |
| RIVERSIDE COUNTY PUBLIC GUARDIAN, | |
| Petitioner and Respondent, | (Super. Ct. No. PRRI2500119) |
| v. | |
| JOSHUA C., | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, Kenneth J. Fernandez, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Objector and Appellant.

Smith Law Offices, Douglas C. Smith and Julian V. Lee; Office of the County Counsel and Stacy Keffer, for Petitioner and Respondent.

Joshua C. appeals the trial court's finding he lacked capacity to refuse antipsychotic medication, claiming the record lacked substantial evidence to

support the court's finding by clear and convincing evidence. We find this matter appropriately resolved by memorandum opinion and affirm. (See generally *People v. Garcia* (2002) 97 Cal.App.4th 847.)

## I.

Over ten years ago, Joshua was diagnosed with schizophrenia. As a result of his diagnosis and "history of poor . . . medication compliance, exacerbated by a history of substance abuse," Joshua has threatened to kill his mother, choked himself with a cable cord, assaulted police officers and a hospital staff member, and stalked his ex-girlfriend. He has also struggled to obtain housing, employment, and public benefits.

In late 2024, after "reportedly be[ing] off his medications for two weeks," Joshua experienced command auditory hallucinations telling him to cut his wrist. After finding probable cause Joshua was a danger to himself and gravely disabled as a result of his mental illness, a hospital placed him under an involuntary hold.

In February 2025, Joshua was appointed a public conservator. Soon after, his conservator petitioned the court to determine Joshua's capacity to refuse antipsychotic medication. Through counsel, Joshua opposed.

In a declaration submitted with the petition, Joshua's treating physician, Jeremy Handy, attested that Joshua refuses the antipsychotic medication "due to poor insight about having Schizophrenia, not because of [a] history of adverse reactions/side effects." Dr. Handy declared he provided Joshua with treatment options and explained, or attempted to explain, the benefits and side effects of that treatment. According to Dr. Handy, no reasonable alternative treatment options are available.

At the hearing, the trial court heard testimony from both Dr. Handy and Joshua.

2

Dr. Handy testified to Joshua's mental health history, diagnosis, evaluations, treatment options and their side effects, and recommendations. Though exercise can help improve the outcomes of Joshua's mental health conditions, Dr. Handy testified antipsychotic medication is necessary to treat Joshua's schizophrenia. Joshua has a "lower likelihood" of improving his symptoms without medication, and instead they would likely increase. Dr. Handy opined that Joshua had "poor insight" into his schizophrenia given Joshua believes his attention deficit hyperactivity disorder rather than his schizophrenia is his "biggest challenge." But ADHD medication will not treat his schizophrenia.

In his testimony, Joshua agreed he has schizophrenia but was "not concerned" about it. Joshua expressed concern about the side effects he experienced when taking antipsychotic medication, including weight gain, drowsiness, and irregular body movement. He testified he would not take medication for his schizophrenia but would take medication for his ADHD. According to Joshua, ADHD medication might "[p]ossibly" cause his schizophrenia to go away.

The trial court found by clear and convincing evidence Joshua lacked the capacity to refuse treatment due to his poor insight into his schizophrenia.

## II.

On appeal, Joshua argues no substantial evidence supports the court's finding he was incapable of refusing treatment. We disagree.

### A.

"A competent adult has the right to refuse medical treatment, including the right to refuse psychotropic drugs." (*Conservatorship of S.A.* (2020) 57 Cal.App.5th 48, 55.) California law "balances the constitutional and

3

common law right to refuse antipsychotic medication with the state interests in caring for individuals who cannot care for themselves and in providing security in institutional settings." (*In re Qawi* (2004) 32 Cal.4th 1, 20.) "This balance is achieved by granting involuntarily committed [mental health] patients a qualified right to refuse medication." (*Ibid.*) Relevant here, a court "may order involuntary medication if clear and convincing evidence shows the conservatee is incompetent to give or withhold informed consent." (*S.A.*, at p. 55.)

A mental health diagnosis alone is not sufficient to warrant a presumption of incompetence. (Welf. & Inst. Code, § 5331.) Nor is a grave disability finding. (*Conservatorship of D.C.* (2019) 39 Cal.App.5th 487, 494.)

To assess a patient's capacity to refuse treatment, the court must consider what are known as the *Riese* factors. (*Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322-1323; *Qawi*, 32 Cal.4th at pp. 17-19.) The *Riese* factors include whether the patient is able to understand (1) his or her medical condition; (2) the benefits, risks, and alternatives to the proposed treatment; and (3) the information required for informed consent and able to rationally evaluate and participate in the treatment decision. (*Qawi*, 32 Cal.4th at p. 18.) Competency is a judicial determination and not a "'clinical, medical, or psychiatric concept.'" (*Riese*, at p. 1321.) If the evidence suggests the patient's health would be "greatly jeopardized" without treatment and the patient shows "no appreciation of the gravity of his [or her] situation, an inference can be drawn the patient understands neither [the] illness nor the need for treatment." (*Conservatorship of Waltz* (1986) 180 Cal.App.3d 722, 728.)

On appeal, "[w]e must determine whether the record contains substantial evidence from which a reasonable trier of fact could have made

the finding" of lack of capacity to refuse medication "by th[e] clear and convincing standard of proof." (*S.A.*, 57 Cal.App.5th at p. 56.) We view the record in the light most favorable to the judgment, do not reweigh the evidence, and draw all reasonable inferences to support the judgment. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 996.)

B.

Here, the trial court determined Joshua "has poor insight into his schizophrenia" because he is "not willing to work with the treatment team" and instead is approaching his treatment in a way the court deemed not rational, like Joshua's belief he needs only ADHD medication. As a result, the court found clear and convincing evidence that Joshua "lack[s] the capacity to refuse consent to treatment by antipsychotic medication." Based on our review of the record against the *Riese* factors, we conclude substantial evidence supports the court's finding.

The first *Riese* factor—Joshua's understanding of his medical condition—weighs slightly against the trial court's finding but is not dispositive. Although Joshua has a history of denying his schizophrenia, he agreed with his diagnosis at the *Riese* hearing. Dr. Handy also testified that Joshua agrees with his diagnosis of schizophrenia. This acceptance of his schizophrenia stands in stark contrast to the patient in *Conservatorship of D.C.* who "repeatedly refused to accept her diagnosis" during her testimony. (*D.C.*, 39 Cal.App.5th at p. 495.) Even so, this factor does not preclude the court's finding given the strength of the two other *Riese* factors.

The second *Riese* factor—Joshua's understanding of the benefits, risks, and alternatives to the proposed treatment—supports the trial court's finding. Joshua's treating physician confirmed medication is necessary because no reasonable alternative treatment exists to treat schizophrenia. In

5

his opinion, Joshua has "poor insight" into his schizophrenia because he is willing to take medication only for ADHD and not for schizophrenia. Joshua's testimony reflects that poor insight, as he expressed more concern about avoiding "weight gain, drowsiness, [and] irregular body movement" he experienced while on antipsychotic medication than avoiding the devastating effects that can result from unmanaged or poorly managed schizophrenia.

The third *Riese* factor—Joshua's ability to knowingly and intelligently evaluate the information required for informed consent and to rationally participate in the treatment decision—strongly supports the trial court's finding. Joshua wants to treat his mental health through alternative means, such as by taking ADHD medication, exercising, and abstaining from street drugs. While Dr. Handy supports these types of healthy practices to improve mental health, antipsychotic medication is necessary to treat Joshua's schizophrenia. Yet Joshua refuses to take antipsychotic medication. Joshua's history of violence against himself and others as a result of his schizophrenia bolsters his physician's testimony that antipsychotic medication is necessary here. Substantial evidence thus supports the court's conclusion that Joshua could not rationally evaluate his treatment decisions.

Joshua counters his testimony reflects rational thought like in *Waltz*, where the court reversed the order finding the patient lacked capacity to refuse electroconvulsive therapy. (*Waltz*, 180 Cal.App.3d at p. 726.) *Waltz*, however, is distinguishable. The *Waltz* patient had a "rational fear" of the proposed therapy based on his understanding (1) it could cause memory loss or death and (2) his doctors were trying to find different medications for him. (*Waltz*, at p. 732.) In contrast, Joshua's concern about milder effects like weight gain and his misunderstanding about realistic alternative treatments

6

show he is not engaging in the same rational decision-making process that warranted reversal in *Waltz*.

When viewed in light most favorable to the judgment, substantial evidence supports finding Joshua lacked capacity to refuse antipsychotic medication.

III.

We affirm.  Each party shall bear its own costs on appeal.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


RUBIN, J.